# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
ABB, INC., Individually and as Successor-in-Interest to I-T-E IMPERIAL COMPANY, f/k/a I-T-E CIRCUIT BREAKER COMPANY; (Please see Additional Parties Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
WAYNE E. VILLINES and CHRISTINE B. VILLINES

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court
400 McAllister Street, San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*
**CGC-25-277280**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David L. Amell (SBN 227207), 1900 Powell Street, Suite 200, Emeryville, CA 94608; Tel: (800) 358-5922

DATE: *(Fecha)* 02/21/2025 Clerk, by *(Secretario)* SAHAR ENAYATI, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: GREENE, TWEED & CO., INC.
   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

SUM-200(A)

| SHORT TITLE: VILLINES v. ABB, INC., et al. | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff [X] Defendant [ ] Cross-Complainant [ ] Cross-Defendant

ACME SERVICE CORP;
AMERICAN BILTRITE, INC.;
BAKER HUGHES OILFIELD OPERATIONS LLC;
BALDOR ELECTRIC COMPANY;
BELDEN INC.;
BOISE CASCADE COMPANY;
BWDAC, INC.;
CHEVRON USA, INC.;
CLEVELAND-CLIFFS STEEL CORPORATION, as Successor-In-Interest to AK STEEL CORPORATION and NATIONAL SUPPLY;
THE COLEMAN COMPANY, INC., as Successor-in-Interest to SANBORN MANUFACTURING COMPANY;
CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC.;
COPELAND CORPORATION LLC;
CROWN CORK & SEAL COMPANY, INC., Individually and as Successor-in-Interest to MUNDET CORK CORPORATION;
DEVON ENERGY CORPORATION, Individually and as Successor-in-Interest to SANTA FE ENERGY RESOURCES, INC.;
DCO, LLC, f/k/a DANA COMPANIES, LLC, Individually and Successor-in-Interest to VICTOR GASKET MANUFACTURING COMPANY and SPICER PARTS;
DINGS COMPANY;
DISCOUNT BUILDERS SUPPLY;
EATON CORPORATION, as Successor-in-Interest to CUTLER-HAMMER, INC.;
EMERSON ELECTRIC CO., Individually and as Successor-in-Interest to US ELECTRIC MOTOR and DOERR ELECTRIC CORPORATION;
EMPIRE SUPPLY CO., INC.;
ENERPAC TOOL GROUP CORP. f/k/a ACTUANT CORPORATION, f/k/a ALLIED POWER, INC., f/k/a ALLIED POWER INDUSTRIES, INC., Individually and as successor-in-interest to BEAR MANUFACTURING COMPANY;
FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as Successor-In-Interest to FELT PRODUCTS MANUFACTURING COMPANY and VELLUMOID DIVISION OF FEDERAL MOGUL;
FLOWSERVE US, INC., solely as successor to EDWARD VALVE & ROCKWELL MANUFACTURING COMPANY;
FMC CORPORATION, Individually and as successor in interest to CHICAGO PUMP COMPANY, PEERLESS PUMP COMPANY, and NORTHERN PUMP COMPANY;
FORT KENT HOLDINGS, INC., Individually and as Successor-in-Interest to DUNHAM-BUSH, as Successor-in-Interest to BRUNNER MANUFACTURING COMPANY;
G. DENVER AND CO., LLC;
GENERAL CABLE CORPORATION;
GENERAL ELECTRIC COMPANY;
GENUINE PARTS COMPANY;
THE GOODYEAR TIRE & RUBBER COMPANY;
GOULD ELECTRONICS, INC., Individually and as successor-in-interest to GOULD, INC., as successor-in-interest to I-T-E IMPERIAL CORP. and BULLDOG ELECTRIC PRODUCTS CO.;
GOULDS PUMPS, LLC;
GRAYBAR ELECTRIC COMPANY, INC.;
GREENE, TWEED & CO., INC.;
HANSON PERMANENTE CEMENT, INC.;
HENNESSY INDUSTRIES, LLC, Individually and as Successor-In-Interest to AMMCO TOOLS, INC.;
HILL BROTHERS CHEMICAL COMPANY;
HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC., individually and as successor-in-interest to the BENDIX CORPORATION, BENDIX AVIATION CORP., and THE SIGNAL COMPANIES, INC., f/k/a SIGNAL OIL & GAS COMPANY;
IMO INDUSTRIES, INC., Individually and as successor in interest to DELAVAL TURBINE INC. and SHARPLES, INC.;
IMPORTED PARTS WEST;

Page 1 of 2

SUM-200(A)

| SHORT TITLE: VILLINES v. ABB, INC., et al. | CASE NUMBER: |
|---|---|

INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☒ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

INDUCTOTHERM CORP.;
KAISER GYPSUM COMPANY, INC.;
KLEPPER ELECTRIC COMPANY;
MAT INDUSTRIES, LLC as Successor-in-Interest to SANBORN MANUFACTURING COMPANY;
MCCORD CORPORATION;
METALCLAD INSULATION, LLC;
MORSE TEC LLC f/k/a BORGWARNER MORSE TEC LLC, Individually and as Successor-In-Interest to BORGWARNER CORPORATION;
OSRAM-SYLVANIA INC.;
PAREX USA, INC. f/k/a PAREXLAHABRA, INC. and LA HABRA PRODUCTS, INC., Individually and as Successor-in-Interest to MERLEX STUCCO, INC.;
PACIFIC COAST SUPPLY, LLC;
PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania Corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION;
PARKER HANNIFIN CORPORATION as Successor-In-Interest to EIS BRAKES;
PFIZER, INC.;
PNEUMO ABEX LLC, Individually and as Successor-By-Merger to PNEUMO ABEX CORPORATION, Successor-In-Interest to ABEX CORPORATION f/k/a AMERICAN BRAKE SHOE COMPANY, f/k/a AMERICAN BRAKE SHOE AND FOUNDRY COMPANY including the AMERICAN BRAKEBLOK DIVISION, Successor-By-Merger to the AMERICAN BRAKE SHOE AND FOUNDRY COMPANY and THE AMERICAN BRAKEBLOK CORPORATION, f/k/a THE AMERICAN BRAKE MATERIALS CORPORATION;
REDCO CORPORATION, formerly known as CRANE CO.;
REGAL REXNORD CORPORATION, Individually and as Successor-in-Interest to FASCO INDUSTRIES;
REX INTERNATIONAL U.S.A. INC.;
REXEL USA, INC., Individually and as Successor-in-Interest to PLATT ELECTRIC SUPPLY;
ROCKWELL AUTOMATION, INC., as Successor-in-Interest to ALLEN-BRADLEY CO.;
RSCC WIRE & CABLE, LLC, a/k/a ROCKBESTOS SUPRENANT CABLE CORPORATION;
SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D COMPANY;
SHELL OIL COMPANY;
SIEMENS INDUSTRY, INC., Individually and as successor-in-interest to I-T-E;
SPORTING GOODS PROPERTIES, INC., Individually and as Successor-in-Interest/pae/et REMINGTON ARMS COMPANY, INC.;
STANDARD MOTOR PRODUCTS, INC.;
SYD CARPENTER, MARINE CONTRACTOR, INC.;
TECUMSEH PRODUCTS COMPANY, LLC, Individually and as Successor-in-Interest to FASCO INDUSTRIES;
T.M. COBB COMPANY, individually and on behalf of its subsidiary HALEY BROS. INC.;
TOSHIBA INTERNATIONAL CORPORATION;
TRIPLE A MACHINE SHOP, INC.;
UNION CARBIDE CORPORATION;
UNION OIL COMPANY OF CALIFORNIA;
VERIZON COMMUNICATIONS, INC., Individually and as Successor-in-Interest to GTE CORPORATION, Successor-in-Interest to ZINSCO ELECTRICAL PRODUCTS;
WEYERHAEUSER COMPANY;
W.W. GRAINGER, INC., Individually and as Successor-in-Interest to DOERR ELECTRIC CORPORATION and DAYTON ELECTRIC MANUFACTURING CO.;
THE W.W. HENRY COMPANY, LP, Individually and as Successor-In-Interest to, and formerly known as THE W.W. HENRY COMPANY;
and DOES 1-150

**MAUNE.RAICHLE.HARTLEY.FRENCH & MUDD, LLC**
David L. Amell, Esq. (State Bar No. 227207)
David L. Rancillio, Esq. (State Bar No. 281129)
1900 Powell Street, Suite 200
Emeryville, California 94608
Telephone: (800) 358-5922
Facsimile: (314) 241-4838
damell@mrhfmlaw.com
drancilio@mrhfmlaw.com

Attorneys for Plaintiffs

ELECTRONICALLY
FILED
*Superior Court of California, County of San Francisco*
**02/21/2025**
**Clerk of the Court**
BY: SAHAR ENAYATI
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO - COURT OF UNLIMITED JURISDICTION

**CGC-25-277280**

| | |
|---|---|
| WAYNE E. VILLINES and CHRISTINE B. VILLINES,<br><br>Plaintiffs,<br><br>vs.<br><br>ABB, INC., Individually and as Successor-in-Interest to I-T-E IMPERIAL COMPANY, f/k/a I-T-E CIRCUIT BREAKER COMPANY;<br>ACME SERVICE CORP;<br>AMERICAN BILTRITE, INC.;<br>BAKER HUGHES OILFIELD OPERATIONS LLC;<br>BALDOR ELECTRIC COMPANY;<br>BELDEN INC.;<br>BOISE CASCADE COMPANY;<br>BWDAC, INC.;<br>CHEVRON USA, INC.;<br>CLEVELAND-CLIFFS STEEL CORPORATION, as Successor-In-Interest to AK STEEL CORPORATION and NATIONAL SUPPLY;<br>THE COLEMAN COMPANY, INC., as Successor-in-Interest to SANBORN MANUFACTURING COMPANY;<br>CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC.;<br>COPELAND CORPORATION LLC;<br>CROWN CORK & SEAL COMPANY, INC., Individually and as Successor-in-Interest to MUNDET CORK CORPORATION; | Case No.:<br><br>**COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS** |

DEVON ENERGY CORPORATION, Individually and as Successor-in-Interest to SANTA FE ENERGY RESOURCES, INC.;
DCO, LLC, f/k/a DANA COMPANIES, LLC, Individually and Successor-in-Interest to VICTOR GASKET MANUFACTURING COMPANY and SPICER PARTS;
DINGS COMPANY;
DISCOUNT BUILDERS SUPPLY;
EATON CORPORATION, as Successor-in-Interest to CUTLER-HAMMER, INC.;
EMERSON ELECTRIC CO., Individually and as Successor-in-Interest to US ELECTRIC MOTOR and DOERR ELECTRIC CORPORATION;
EMPIRE SUPPLY CO., INC.;
ENERPAC TOOL GROUP CORP. f/k/a ACTUANT CORPORATION, f/k/a ALLIED POWER, INC., f/k/a ALLIED POWER INDUSTRIES, INC., Individually and as successor-in-interest to BEAR MANUFACTURING COMPANY;
FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as Successor-In-Interest to FELT PRODUCTS MANUFACTURING COMPANY and VELLUMOID DIVISION OF FEDERAL MOGUL;
FLOWSERVE US, INC., solely as successor to EDWARD VALVE & ROCKWELL MANUFACTURING COMPANY;
FMC CORPORATION, Individually and as successor in interest to CHICAGO PUMP COMPANY, PEERLESS PUMP COMPANY, and NORTHERN PUMP COMPANY;
FORT KENT HOLDINGS, INC., Individually and as Successor-in-Interest to DUNHAM-BUSH, as Successor-in-Interest to BRUNNER MANUFACTURING COMPANY;
G. DENVER AND CO., LLC;
GENERAL CABLE CORPORATION;
GENERAL ELECTRIC COMPANY;
GENUINE PARTS COMPANY;
THE GOODYEAR TIRE & RUBBER COMPANY;
GOULD ELECTRONICS, INC., Individually and as successor-in-interest to GOULD, INC., as successor-in-interest to I-T-E IMPERIAL CORP. and BULLDOG ELECTRIC PRODUCTS CO.;
GOULDS PUMPS, LLC;
GRAYBAR ELECTRIC COMPANY, INC.;
GREENE, TWEED & CO., INC.;
HANSON PERMANENTE CEMENT, INC.;

HENNESSY INDUSTRIES, LLC, Individually and as Successor-In-Interest to AMMCO TOOLS, INC.;
HILL BROTHERS CHEMICAL COMPANY;
HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC., individually and as successor-in-interest to the BENDIX CORPORATION, BENDIX AVIATION CORP., and THE SIGNAL COMPANIES, INC., f/k/a SIGNAL OIL & GAS COMPANY;
IMO INDUSTRIES, INC., Individually and as successor in interest to DELAVAL TURBINE INC. and SHARPLES, INC.;
IMPORTED PARTS WEST;
INDUCTOTHERM CORP.;
KAISER GYPSUM COMPANY, INC.;
KLEPPER ELECTRIC COMPANY;
MAT INDUSTRIES, LLC as Successor-in-Interest to SANBORN MANUFACTURING COMPANY;
MCCORD CORPORATION;
METALCLAD INSULATION, LLC;
MORSE TEC LLC f/k/a BORGWARNER MORSE TEC LLC, Individually and as Successor-In-Interest to BORGWARNER CORPORATION;
OSRAM-SYLVANIA INC.;
PAREX USA, INC. f/k/a PAREXLAHABRA, INC. and LA HABRA PRODUCTS, INC., Individually and as Successor-in-Interest to MERLEX STUCCO, INC.;
PACIFIC COAST SUPPLY, LLC;
PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania Corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION;
PARKER HANNIFIN CORPORATION as Successor-In-Interest to EIS BRAKES;
PFIZER, INC.;
PNEUMO ABEX LLC, Individually and as Successor-By-Merger to PNEUMO ABEX CORPORATION, Successor-In-Interest to ABEX CORPORATION f/k/a AMERICAN BRAKE SHOE COMPANY, f/k/a AMERICAN BRAKE SHOE AND FOUNDRY COMPANY including the AMERICAN BRAKEBLOK DIVISION, Successor-By-Merger to the AMERICAN BRAKE SHOE AND FOUNDRY COMPANY and THE AMERICAN BRAKEBLOK CORPORATION, f/k/a THE

AMERICAN BRAKE MATERIALS CORPORATION;
REDCO CORPORATION, formerly known as CRANE CO.;
REGAL REXNORD CORPORATION, Individually and as Successor-in-Interest to FASCO INDUSTRIES;
REX INTERNATIONAL U.S.A. INC.;
REXEL USA, INC., Individually and as Successor-in-Interest to PLATT ELECTRIC SUPPLY;
ROCKWELL AUTOMATION, INC., as Successor-in-Interest to ALLEN-BRADLEY CO.;
RSCC WIRE & CABLE, LLC, a/k/a ROCKBESTOS SUPRENANT CABLE CORPORATION;
SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D COMPANY;
SHELL OIL COMPANY;
SIEMENS INDUSTRY, INC., Individually and as successor-in-interest to I-T-E;
SPORTING GOODS PROPERTIES, INC., Individually and as Successor-in-Interest/pae/et REMINGTON ARMS COMPANY, INC.;
STANDARD MOTOR PRODUCTS, INC.;
SYD CARPENTER, MARINE CONTRACTOR, INC.;
TECUMSEH PRODUCTS COMPANY, LLC, Individually and as Successor-in-Interest to FASCO INDUSTRIES;
T.M. COBB COMPANY, individually and on behalf of its subsidiary HALEY BROS. INC.;
TOSHIBA INTERNATIONAL CORPORATION;
TRIPLE A MACHINE SHOP, INC.;
UNION CARBIDE CORPORATION;
UNION OIL COMPANY OF CALIFORNIA;
VERIZON COMMUNICATIONS, INC., Individually and as Successor-in-Interest to GTE CORPORATION, Successor-in-Interest to ZINSCO ELECTRICAL PRODUCTS;
WEYERHAEUSER COMPANY;
W.W. GRAINGER, INC., Individually and as Successor-in-Interest to DOERR ELECTRIC CORPORATION and DAYTON ELECTRIC MANUFACTURING CO.;
THE W.W. HENRY COMPANY, LP, Individually and as Successor-In-Interest to, and formerly known as THE W.W. HENRY COMPANY;

and DOES 1-150,

Defendants.

## GENERAL ALLEGATIONS

COME NOW, Plaintiffs WAYNE E. VILLINES and CHRISTINE B. VILLINES (hereinafter "Plaintiffs"), and complain and allege as follows:

1. Plaintiff WAYNE E. VILLINES (hereinafter "Plaintiff") has been diagnosed with mesothelioma.

2. Plaintiffs were married on May 13, 1978.

3. As used herein, the term "asbestos" collectively refers to the mineral asbestos in any type or form, including but not limited to chrysotile, amosite, tremolite, actinolite, anthophyllite and/or crocidolite, as well as the asbestiform varieties thereof.

4. As used herein, the term "asbestos-containing products" collectively means asbestos and products incorporating any amount of asbestos, whether added as a component and/or present as a contaminant in any manner, including asbestos-contaminated talc.

5. Prior to his diagnosis, Plaintiff was exposed to asbestos fibers by using and handling asbestos fibers and products incorporating asbestos as a component, and being in the presence of others using and handling asbestos fibers and products incorporating asbestos as a component, as alleged herein.

6. Plaintiff's cumulative exposure to asbestos, as a result of acts and omissions of defendants, their alternate entities, and each of them, and the defective products of defendants, their alternate entities, and each of them as hereinafter alleged, individually and together, were a substantial factor in increasing Plaintiff's risk of mesothelioma and other related injuries, and therefore a legal cause of Plaintiff's injuries and damages as set forth herein.

7. Plaintiff was not aware at the time of exposure that asbestos presented any risk of injury and/or disease in human beings, and particularly was not aware that exposure to asbestos presented a risk of incurable, fatal cancer in human beings.

8. Plaintiffs' claims are timely filed and are not barred by any applicable statute of limitations or statute of repose.

9. Each of the herein named defendants is liable for its own tortious conduct and/or the tortious conduct of each and every "alternate entity", whether or not said entity is specifically named herein. Defendants, and each of them, including but not limited to the following defendants, are liable for the acts of their "alternate entity," and each of them, including that there has been a corporate name change, defendant is the successor by merger or successor by other acquisition resulting in a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the liabilities, assets, product line, and/or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of Plaintiffs' remedies against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity." Plaintiffs are aware of the following specific named "alternate entities" as to certain defendants, but do not contend this is a fully inclusive or exhaustive list of all "alternate entities" of defendants herein:

| **DEFENDANT** | **ALTERNATE ENTITIES** |
|---|---|
| ABB, INC. | I-T-E IMPERIAL COMPANY<br>I-T-E CIRCUIT BREAKER COMPANY |
| CLEVELAND-CLIFFS STEEL CORPORATION | AK STEEL CORPORATION<br>NATIONAL SUPPLY |
| THE COLEMAN COMPANY, INC. | SANBORN MANUFACTURING COMPANY |
| CROWN CORK & SEAL COMPANY, INC. | MUNDET CORK CORPORATION |
| DEVON ENERGY CORPORATION | SANTA FE ENERGY RESOURCES, INC. |
| DCO, LLC | DANA COMPANIES, LLC |

| | |
|---|---|
| | VICTOR GASKET MANUFACTURING COMPANY<br><br>SPICER PARTS |
| EATON CORPORATION | CUTLER-HAMMER, INC. |
| EMERSON ELECTRIC CO. | US ELECTRIC MOTOR<br><br>DOERR ELECTRIC CORPORATION |
| ENERPAC TOOL GROUP CORP. | ACTUANT CORPORATION<br><br>ALLIED POWER, INC.<br><br>ALLIED POWER INDUSTRIES, INC.<br><br>BEAR MANUFACTURING COMPANY |
| FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST | FELT PRODUCTS MANUFACTURING COMPANY<br><br>VELLUMOID DIVISION OF FEDERAL MOGUL |
| FLOWSERVE US, INC. | EDWARD VALVE<br><br>ROCKWELL MANUFACTURING COMPANY |
| FMC CORPORATION | CHICAGO PUMP COMPANY<br>NORTHERN PUMP COMPANY<br>PEERLESS PUMP COMPANY |
| FORT KENT HOLDINGS, INC. | DUNHAM-BUSH<br><br>BRUNNER MANUFACTURING COMPANY |
| GOULD ELECTRONICS, INC. | GOULD, INC.<br><br>I-T-E IMPERIAL CORP.<br><br>BULLDOG ELECTRIC PRODUCTS CO. |
| HENNESSY INDUSTRIES, LLC | AMMCO TOOLS, INC. |
| HONEYWELL INTERNATIONAL, INC. | ALLIED SIGNAL, INC.<br><br>BENDIX CORPORATION<br><br>BENDIX AVIATION CORP. |

| | |
|---|---|
| | THE SIGNAL COMPANIES, INC.<br>SIGNAL OIL & GAS COMPANY |
| IMO INDUSTRIES, INC. | DELAVAL TURBINE INC.<br>SHARPLES, INC. |
| MAT INDUSTRIES, LLC | SANBORN MANUFACTURING COMPANY |
| MORSE TEC LLC | BORGWARNER MORSE TEC LLC<br>BORGWARNER CORPORATION |
| PAREX USA, INC. | PAREXLAHABRA, INC.<br>LA HABRA PRODUCTS, INC.<br>MERLEX STUCCO, INC. |
| PARAMOUNT GLOBAL | VIACOMCBS INC.<br>CBS CORPORATION, a Delaware Corporation<br>VIACOM, INC.<br>CBS CORPORATION, a Pennsylvania Corporation<br>WESTINGHOUSE ELECTRIC CORPORATION |
| PARKER HANNIFIN CORPORATION | EIS BRAKES |
| PNEUMO ABEX LLC | PNEUMO ABEX CORPORATION<br>ABEX CORPORATION<br>AMERICAN BRAKE SHOE COMPANY<br>AMERICAN BRAKE SHOE AND FOUNDRY COMPANY<br>AMERICAN BRAKEBLOK DIVISION<br>AMERICAN BRAKE SHOE AND FOUNDRY COMPANY<br>THE AMERICAN BRAKEBLOK CORPORATION |

| | |
|---|---|
| | THE AMERICAN BRAKE MATERIALS CORPORATION |
| REDCO CORPORATION | CRANE CO. |
| REGAL REXNORD CORPORATION | FASCO INDUSTRIES |
| REXEL USA, INC. | PLATT ELECTRIC SUPPLY |
| ROCKWELL AUTOMATION, INC. | ALLEN-BRADLEY CO. |
| RSCC WIRE & CABLE, LLC | ROCKBESTOS SUPRENANT CABLE CORPORATION |
| SCHNEIDER ELECTRIC USA, INC. | SQUARE D COMPANY |
| SIEMENS INDUSTRY, INC. | I-T-E |
| SPORTING GOODS PROPERTIES, INC. | REMINGTON ARMS COMPANY, INC. |
| T.M. COBB COMPANY | HALEY BROS. INC. |
| TECUMSEH PRODUCTS COMPANY, LLC | FASCO INDUSTRIES |
| VERIZON COMMUNICATIONS, INC. | GTE CORPORATION<br><br>ZINSCO ELECTRICAL PRODUCTS |
| W.W. GRAINGER, INC. | DOERR ELECTRIC CORPORATION<br><br>DAYTON ELECTRIC MANUFACTURING CO. |
| THE W.W. HENRY COMPANY, LP | THE W.W. HENRY COMPANY |

10. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 100, are unknown to Plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, Plaintiffs will amend their complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages thereby to Plaintiff, as hereinafter alleged.

///

11. Each Defendant, whether explicitly named herein or a DOE Defendant, and each Defendant's alternate entities, are referred to collectively henceforth as "Defendants".

12. Plaintiffs are informed and believe, and therefore allege, that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction; that at all relevant times, Defendants were and are authorized to do business in the State of California; that Defendants have minimum contacts with the State of California, including through placing their products in the stream of commerce in the State of California, and regularly conducting business in the State of California, such that Defendants are subject to the jurisdiction of the State of California.

13. Plaintiffs are informed and believe, and therefore allege, that one or more Defendants reside in San Francisco County in the State of California, and/or that some of the exposure giving rise to Plaintiffs' claims occurred in San Francisco County, such that venue is proper in San Francisco County.

14. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, asbestosis, pleural plaques, lung cancer, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers, without perceptible trauma on exposure, and that said diseases result from exposure to asbestos over a period of time.

15. Plaintiffs are informed and believe, and therefore allege, that Defendants exposed Plaintiff to the same hazardous product, namely asbestos.

16. As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to respirable asbestos, which he inhaled and which thereby entered his body, and which caused him to suffer the severe and permanent harm set forth herein.

17. As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff suffered permanent injuries, including, but not limited to mesothelioma, and the mental, physical

and emotional distress attendant thereto, all to Plaintiffs' incurred general damages in a sum in excess of $75,000.00.

18. As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs have paid and/or incurred liability for medical costs, including, but not limited to, the costs of physicians, surgeons, nurses, hospital care, medicine, hospices, medical imaging, palliative care and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time.

19. As a further direct and proximate result of Defendants' conduct as hereinafter alleged, Plaintiff has incurred, and will incur, loss of the ability to perform household services, loss of income, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs.

20. This case arises under the law of California, and under the general maritime law of the United States. Plaintiffs disclaim any claim, if any, arising under the "Death on the High Seas Act" (46 U.S.C. § 30301, et seq.)

## FIRST CAUSE OF ACTION
**(Negligence)**

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-50, AND EACH OF THEM, FOR A CAUSE OF ACTION FOR NEGLIGENCE, AND ALLEGE AS FOLLOWS:**

21. Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

22. At all relevant times, Defendants were engaged in the business of placing asbestos-containing products into the stream of commerce, including by mining, milling, refining, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and/or advertising said products.

///

23. At all relevant times, Defendants negligently and carelessly placed asbestos-containing products into the stream of commerce as set forth above, which caused personal injuries and damages to users and consumers of said products, and persons in proximity to users and consumers of said asbestos-containing products, including Plaintiff (collectively, "exposed persons") when said asbestos-containing products were used and/or misused in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use.

24. At all relevant times, Defendants negligently and carelessly researched, designed, modified, tested and/or failed to test asbestos-containing products, which caused personal injuries and damages to exposed persons when used and/or misused in a manner that was reasonably foreseeable, such that said products were unsafe and dangerous for use by exposed persons.

25. At all relevant times, Defendants and their employees, contractors, subcontractors and/or agents, in the performance of their work, negligently and carelessly used asbestos-containing products in proximity to exposed persons, including Plaintiff, such that these persons were exposed to respirable asbestos.

26. At all relevant times, Defendants negligently and carelessly failed to warn and/or inadequately warned of the health hazards of these asbestos-containing products, and failed to provide adequate use instructions or other information for eliminating the health risks inherent in their use, in that asbestos-containing products caused personal injuries to exposed persons while being used and/or misused in a manner that was reasonably foreseeable and/or actually foreseen by Defendants, such that said products were unsafe and dangerous for use by exposed persons.

27. At all relevant times, Defendants owed a duty to Plaintiff and other foreseeably affected persons to exercise due care in the pursuance of the activities mentioned above, and Defendants breached this duty of due care.

28. Defendants knew, or should have known, and intended, that asbestos-containing products would be transported by truck, rail, ship and other common carriers, and knew, or should have known, that in the shipping process the products would break, crumble, crack, shed

or be otherwise damaged, resulting in the release of airborne asbestos fibers in the proximity of Plaintiff and other exposed persons, who would then be exposed to, and inhale, said respirable fibers.

29. Defendants knew, or should have known, and intended, that asbestos shipped in bags made of permeable materials such as jute or burlap, or breakable materials such as paper or plastic, would be transported by truck, rail, ship and other common carriers, and that as a result of such transportation, the bags would leak, tear, rip, split open, break, and otherwise cause asbestos to be released from the bags into the compartment in which they were transported and the surrounding air, thereby exposing exposed persons to these respirable fibers.

30. Defendants knew, or should have known, and intended that the process of normal, intended, and/or foreseeable use and/or misuse of these asbestos-containing products would result in the release of airborne asbestos fibers in the proximity of exposed persons, who would then be exposed to and inhale said asbestos fibers.

31. At all times herein relevant, Defendants were aware that asbestos-containing products were defective and dangerous, but nonetheless failed to take reasonable precautions, such as providing adequate warnings and/or other information regarding the hazards of said products to known or foreseeable exposed persons, including Plaintiff.

32. At all times herein, Defendants failed to recall asbestos-containing products that had been placed in the stream of commerce, and/or to retrofit asbestos-containing products so as to eliminate the risk of exposure to asbestos from said products. A reasonable manufacturer, distributor, marketer, supplier and/or seller of asbestos-containing products would, under the same or similar circumstances, have warned and/or adequately warned of the hazards associated with their use, so that persons in possession of, or exposed to, said asbestos fibers could cease their use, abate any asbestos-containing materials present, and otherwise act to protect themselves from harm. A reasonable manufacturer, distributor, supplier, marketer and/or seller of asbestos fibers would also, under the same or similar circumstances, have recalled these products from the market, and/or retrofitted said products in order to make them safe.

33. Plaintiff suffers from injury and disease, including malignant mesothelioma, as a result of said exposure to asbestos-containing products as set forth herein. Plaintiff was not aware at the time of this exposure that Defendants' asbestos-containing products presented any risk of injury and/or disease to Plaintiff from work with and around these products.

34. Defendants' conduct and Defendants' placing of defective products into the stream of commerce, as set forth herein, were a direct and proximate cause of Plaintiff's injuries and damages.

35. Furthermore, the conduct of Defendants in continuing to market and sell products which they knew were dangerous to human health, without adequate warnings or proper use instructions, was done with reckless and conscious disregard for, and indifference to, the safety and health of Plaintiff and other exposed persons.

36. Defendants acted with reckless disregard for the safety of Plaintiff and other exposed persons who came in contact with Defendants' asbestos-containing products, in that Defendants knew or should have known that there was a substantial risk of injury and death resulting from exposure to asbestos, as set forth above, and that these risks included asbestosis, pleural plaques, lung cancer and mesothelioma.

37. On or before 1930, and thereafter, Defendants, who as a matter of law are held to the knowledge of an expert, knew or should have known of the hazards of exposure to asbestos, by way of medical, scientific and industrial literature, including but not limited to literature available to organizations of which Defendants and their agents, officers, directors, managing agents and/or employees were members.

38. Defendants were aware that members of the general public and other exposed persons, including Plaintiff, would assume, and in fact did assume, that exposure to asbestos-containing products was safe, when in fact said exposure was and is extremely hazardous.

39. Defendants' conduct was motivated by Defendants' financial interests and was conducted for Defendants' own benefit and profit. In continuing to place asbestos-containing products in the stream of commerce in furtherance of their financial interest and for their own

benefit, Defendants consciously disregarded the safety of exposed persons, including Plaintiff, and in fact were consciously willing and intended to permit asbestos to cause injury to exposed persons, including Plaintiff.

40. In furtherance of their financial interests and for their own benefit, Defendants induced exposed persons to purchase, select and work with, and in proximity to, their asbestos-containing products, causing these persons to become exposed to asbestos.

41. Defendants are liable for the fraudulent, oppressive, and malicious acts of their alternate entities, and each of them, and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, and/or should have known of, the acts and omissions of Defendants, as set forth herein.

42. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and done in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof, excluding as to Defendants Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc.

WHEREFORE, Plaintiffs pray judgment against Defendants.

## SECOND CAUSE OF ACTION
**(Strict Liability)**

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-50, AND EACH OF THEM, FOR A SECOND CAUSE OF ACTION FOR STRICT LIABILITY, AND ALLEGE AS FOLLOWS:**

43. Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

44. Defendants marketed, manufactured, sold, supplied, distributed, rebranded, relabeled, and otherwise placed asbestos-containing products into the stream of commerce.

45. Defendants' asbestos-containing products were defective and unsafe for their intended purpose, in that they did not perform as safely as expected by an ordinary consumer when used or misused in a reasonably foreseeable or intended manner, as asbestos-containing

products were capable of causing and in fact did cause serious bodily injury and harm to exposed persons, including Plaintiff.

46. These defects in Defendants' asbestos-containing products existed and were present at the time the products left Defendants' possession. These asbestos-containing products were intended to reach the ultimate consumer in the same condition as they left Defendants' possession, custody and/or control. These asbestos-containing products did, in fact, cause severe injury and bodily harm to exposed persons, including Plaintiff, while being used and/or misused in a reasonably foreseeable manner, thereby rendering them defective, unsafe and dangerous for use.

47. The defects in the asbestos-containing products placed in the stream of commerce by Defendants were a substantial factor in increasing Plaintiff's risk of developing an asbestos-related disease, including mesothelioma, which he did in fact develop, and thus in causing the injuries and damages sustained by Plaintiffs.

48. Plaintiff's use and/or misuse, and the use and/or misuse by others in his proximity, of said asbestos-containing products occurred in a manner that was reasonably foreseeable to Defendants.

49. Asbestos-containing products posed risks to human health that were known and/or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific and medical communities at the time Defendants placed said products into the stream of commerce.

50. The potential risks of asbestos-containing products presented a substantial danger to human health when used and/or misused in a way intended by, and/or reasonably foreseeable to, Defendants.

51. Defendants knew and intended that asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts, and without knowledge of the hazards involved in such use.

///

52. Defendants whose asbestos-containing products reached exposed persons by way of an intermediary, such as a supplier or manufacturer of a finished product, did not reasonably rely on such intermediaries to convey adequate warnings to others regarding the hazards of asbestos generally or of Defendants' asbestos-containing products specifically.

53. Exposed persons, including Plaintiff, did not know of the substantial danger of using asbestos-containing products, and did not have the same or similar access to medical, industrial and scientific sources of such knowledge as were actually and/or constructively available to Defendants.

54. Said dangers were not readily recognizable by Plaintiff or other exposed persons. Defendants failed to warn, adequately warn, or instruct of the potential hazards of said asbestos-containing products, and these acts and/or omissions were a substantial factor in causing harm to Plaintiff as set forth herein.

55. Plaintiff was not negligent in any manner, including in Plaintiff's use or alleged modification or misuse of asbestos-containing products, and negligence by Plaintiff was not a substantial factor in causing or contributing to Plaintiffs' injuries or damages.

56. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and done in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof, excluding as to Defendants Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc.

WHEREFORE, Plaintiffs pray judgment against Defendants.

///

///

///

///

///

///

**THIRD CAUSE OF ACTION**
**(Negligent Misrepresentation)**

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-50 AND EACH OF THEM, EXCLUDING AS TO DEFENDANTS KAISER GYPSUM COMPANY, INC. AND HANSON PERMANENTE CEMENT, INC., FOR A THIRD CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION, AND ALLEGE AS FOLLOWS:**

57. Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

58. Defendants, through words and conduct, represented that asbestos generally and asbestos-containing products marketed, sold, supplied, distributed, disturbed, installed removed, and/or placed in the stream of commerce by Defendants were of merchantable quality and safe for their intended and foreseeable use.

59. Defendants' representations were made to members of the general public, the purchasers and users of said products, and other exposed persons including Plaintiff, intending or reasonably expecting that it would heard by Plaintiff and others similarly situated.

60. Defendants' representations were not true, because asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, in that asbestos has very dangerous properties and defects because it causes harm and disease in human beings, including but not limited to asbestosis, lung cancer, pleural plaques, and mesothelioma.

61. Defendants had no reasonable grounds for believing these representations were true when Defendants made them.

62. Defendants intended that members of the general public, the purchasers and users of said products, and other exposed persons including Plaintiff would rely on these representations.

63. As intended by Defendants, Plaintiff and other similarly situated exposed persons reasonably relied on Defendants' representations of Defendants, as such representations substantially influenced Plaintiff and others to purchase, use, recommend, supply, specify and/or

work in the presence of said products, such that Plaintiff and others similarly situated were injured and damaged as a proximate result.

64. As a direct and proximate result of his reliance on Defendants' representations, which were a substantial factor in causing harm, Plaintiff sustained injuries and damages as set forth herein.

65. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

**FOURTH CAUSE OF ACTION**
**(Fraud by Nondisclosure)**

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-50 AND EACH OF THEM, EXCLUDING AS TO DEFENDANTS KAISER GYPSUM COMPANY, INC. AND HANSON PERMANENTE CEMENT, INC., FOR A FOURTH CAUSE OF ACTION FOR FRAUD BY NONDISCLOSURE, AND ALLEGE AS FOLLOWS:**

66. Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

67. Defendants sold their products directly to Plaintiff thereby creating a direct transactional relationship between Defendants and Plaintiff giving rise to a duty to disclose. Defendants directly profited from the sale of their products to Plaintiff.

68. Furthermore, Defendants directly advertised their products to Plaintiff and others similarly situated. Plaintiff therefore belonged to a class of persons to whom Defendants owed a duty to disclose.

69. Defendants intentionally failed to disclose to Plaintiff and others similarly situated the fact that asbestos generally and asbestos-containing products marketed, sold, supplied, distributed, disturbed, installed removed, and/or placed in the stream of commerce by Defendants were not safe for their intended use, nor were they of merchantable quality, in that

asbestos, and thus any product containing asbestos, has very dangerous properties and defects because asbestos fibers cause serious harm and disease in human beings, including but not limited to asbestosis, lung cancer, pleural plaques, and mesothelioma.

70. Defendants intentionally failed to disclose certain facts which were known exclusively to them, and which Plaintiff could not have discovered, as Defendants had knowledge of the composition and hazardous nature of their asbestos-containing products, including the existence of and amount of asbestos present in said products and the propensity of those products to release asbestos fibers into the air during their ordinary and intended use.

71. Plaintiff and others similarly situated did not know that that asbestos, and thus any product containing asbestos, has very dangerous properties and defects because it causes serious harm and disease in human beings, including but not limited to asbestosis, lung cancer, pleural plaques, and mesothelioma.

72. Defendants intended to deceive Plaintiff and others similarly situated by concealing these facts as set forth herein.

73. Plaintiff relied upon Defendants' intentional nondisclosure to Plaintiff's detriment. Had Defendants not concealed information about the hazards associated with asbestos and Defendants' asbestos-containing products, Plaintiff reasonably would have behaved differently, which may have included behavior such as using different safety and industrial hygiene measures or purchasing products with less or no asbestos content.

74. Defendants' fraudulent nondisclosure was a substantial factor in causing harm to Plaintiff, and as a result of Defendants' concealment of facts known to them, Plaintiff sustained injuries and damages as set forth herein.

75. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

**FIFTH CAUSE OF ACTION**
**(Vicarious Liability Based on Respondeat Superior)**

**PLAINTIFFS COMPLAIN OF AGAINST DEFENDANTS ON EXHIBIT "C" AND DOES 51-100, AND EACH OF THEM, FOR A FIFTH CAUSE OF ACTION FOR VICARIOUS LIABILITY BASED ON RESPONDEAT SUPERIOR, AND ALLEGE AS FOLLOWS:**

76. Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

77. At all relevant times, Defendants retained, employed and/or hired workers, contractors and/or other personnel (hereinafter collectively "employees") in areas where Defendants owned, maintained, controlled, managed and/or conducted business activities where Plaintiff worked and/or was otherwise present.

78. At all relevant times, Defendants' employees encountered asbestos-containing products during the course and scope of their employment, and during their regular work activities negligently disturbed said products, causing the release of respirable asbestos fibers, to which Plaintiff was exposed.

79. These employees handling and disturbing asbestos-containing products in Plaintiff's vicinity were Defendants' agents, and at all times herein relevant, were subject to Defendants' control with respect to their acts, labor, and work involving (a) the removal, transport, installation, cleaning, handling, and maintenance of asbestos-containing products, including debris and dust generated from work with asbestos-containing products, and (b) the implementation of safety policies and procedures regarding their work with and asbestos-containing products.

80. Defendants controlled both the means and manner of performance of the work of their employees as described herein.

81. Defendants' employees received monetary compensation from Defendants in exchange for the work performed as described herein, and these employees performed the work as described herein in the transaction and furtherance of Defendants' business.

///

82. Respirable asbestos fibers were released during Defendants' employees' use, handling, breaking, and/or otherwise disturbing asbestos-containing products.

83. Defendants' employees' use, handling, manipulation and/or disturbing of asbestos-containing products, as required by their employment and occurring during the course and scope of their employment, did, in fact, cause personal injuries, including mesothelioma and other lung damage to exposed persons, including Plaintiff.

84. Defendants' employees were negligent in that they failed to isolate their work with asbestos-containing products and/or to suppress asbestos fibers from being released into the air and surrounding areas; failed to take appropriate steps to learn how to prevent exposure to asbestos-containing products; failed to warn and/or adequately warn Plaintiff that he was being exposed to asbestos-containing products; and failed to adequately warn Plaintiff of the harm associated with his exposure to asbestos-containing products and/or provide him with protection to prevent his contamination with or inhalation of asbestos.

85. At all relevant times, Defendants had extensive knowledge and experience in the field of work to be performed, and therefore knew or should have known of the risks created by the work of its employees as set forth herein.

86. Defendants' employees knew or should have known that failure to take such steps would result in exposure to bystanders, including Plaintiff and others similarly situated.

87. Defendants' employees owed Plaintiff, and other similarly situated persons, a duty to exercise due care and diligence in their activities, so as to avoid causing harm to Plaintiff and others similarly situated.

88. Defendants' employees breached this duty of care as herein described.

89. At all times herein mentioned, Plaintiff was unaware of the dangerous conditions and unreasonable risk of personal injury created by Defendants' employees' use of and work with and around asbestos-containing products.

///

///

90. As a direct result of Defendants' conduct, Plaintiff was exposed to asbestos-containing products, causing severe and permanent injury and the damages and injuries to Plaintiff as complained of herein.

91. Based on the foregoing, Defendants, as the employers of said employees, are vicariously liable under the doctrine of respondeat superior for all negligent acts and omissions committed by their employees in the course and scope of their work that caused harm to Plaintiff.

92. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

**<u>SIXTH CAUSE OF ACTION</u>**
**(Premise Owner/Contractor Liability)**

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", AND DOES 51-100, AND EACH OF THEM, FOR A SIXTH CAUSE OF ACTION FOR PREMISES OWNER/CONTRACTOR LIABILITY, AND ALLEGE AS FOLLOWS:**

93. Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

94. Plaintiff was exposed to asbestos-containing products in a manner that was reasonably foreseeable to Defendants.

95. At all times herein mentioned, Defendants caused asbestos-containing products to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by Defendants.

96. At all times mentioned herein, Defendants owned, leased, maintained, managed, and/or otherwise controlled the premises where Plaintiff was present.

97. At all relevant times and places, Defendants caused asbestos-containing products, to be constructed, installed, maintained, used, supplied, replaced, repaired, disturbed and/or

removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, causing the release of dangerous quantities of respirable asbestos fibers, thereby creating hazardous and unsafe conditions such that Plaintiff and similarly situated persons were exposed to respirable asbestos fibers while present at said premises.

98. At all times mentioned herein, Defendants knew or, in the exercise of ordinary and reasonable care, should have known, that the foregoing conditions and activities created hazardous and unsafe conditions which posed an unreasonable risk of harm to Plaintiff and persons present on each of the aforesaid respective premises.

99. At all times relevant herein, Plaintiff entered and/or occupied these premises as intended and for the benefit and advantage of Defendants and at their request and invitation. In so doing, Plaintiff was exposed to dangerous quantities of respirable asbestos fibers released through activities managed, maintained, initiated, created, controlled and/or caused by Defendants.

100. Plaintiff at all relevant times were unaware of the hazardous conditions or the risk of personal injury created by the aforesaid presence and use of asbestos-containing products on said premises.

101. At all relevant times, Defendants remained in control of the premises where Plaintiff worked.

102. At all relevant times, Defendants owed to Plaintiff and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid creating an unreasonable risk of harm, and to avoid causing injury, to Plaintiff and others similarly situated.

103. At all relevant times, Defendants knew, or in the exercise of ordinary and reasonable care should have known, that the premises in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, and that the persons present and using said premises such as Plaintiff would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

///

104. At all relevant times, Defendants negligently failed to abate, correct or warn Plaintiff of the existence of these dangerous conditions and hazards on the premises.

105. Defendants caused asbestos-containing products to be constructed, installed, maintained, used, replaced, repaired, disturbed and/or removed on these premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of respirable asbestos fibers on the premises, which Plaintiff inhaled, thereby causing him injury.

106. At all relevant times, Defendants should have recognized that the work of said contractors with asbestos-containing products would result in the release of asbestos fibers into the air, creating dangerous conditions which posed a substantial risk of harm to Plaintiff and others similarly situated unless appropriate precautions were taken.

107. Defendants knew or should have known that the work performed on their premises required appropriate industrial hygiene controls to be implemented to avoid creating a risk of harm from asbestos-containing products, and were aware or should have been aware that such procedures were not taken.

108. The negligent conduct of the contractors employed by Defendants includes, but is not limited to:

a) Failure to warn of the presence and hazardous nature of asbestos-containing products;

b) Failure to use appropriate industrial hygiene controls to remove, reduce and/or eliminate the release of asbestos-containing products;

c) Failure to provide adequate personal protection from exposure and inhalation of respirable asbestos fibers, including but not limited to the use of breathing protection, work clothing, disposable coveralls, change rooms, and/or showers;

d) Failure to inspect, monitor and/or test the air on the premises for the presence of asbestos and to determine the quantity of asbestos present;

///

///

e) Failure to provide appropriate medical monitoring for contractors, employees and others present on the premises, including Plaintiff and others similarly situated, to detect the presence of asbestos-related disease and injury.

109. At all relevant times, Defendants were subject to certain rules, ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders.

110. At all relevant times, Defendants were required to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances as prescribed by Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants and under the regulations promulgated by California regional Air Quality Management Districts as empowered by California Health and Safety Code §40.200, *et seq*.

111. Defendants violated these rules, ordinances, statutes, and other government regulations by:

a) Failing to comply with statutes, and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

b) Failing to segregate work involving the release of asbestos;

c) Failing to suppress asbestos using prescribed ventilation techniques;

d) Failing to suppress asbestos using prescribed "wet down" techniques;

e) Failing to warn or educate Plaintiff and others similarly situated regarding the presence and risks of asbestos-containing products on the premises;

f) Failing to provide appropriate respiratory protection devices;

g) Failing to ensure appropriate respiratory protection devices were used properly, including administering 'fit tests';

h) Failing to provide for an ongoing health screening program for those exposed to asbestos-containing products on the premises;

i) Failing to provide adequate housekeeping and clean-up of the work place;

j) Failing to properly warn of the hazards associated with asbestos-containing products as required by these statutes;

k) Failing to properly report renovation and disturbance of asbestos-containing products, as required by statutes and regulations, including but not limited to BAAQMD Regulation 11-2-401 and/or SCQAMD Rule 1403 D(1);

l) Failing to have an asbestos removal supervisor present, as required by regulation;

m) Failing to obtain approval for renovation as required by statutes; and

n) Failing to maintain records as required by statute.

112. Plaintiff was at all times unaware of the hazardous condition or the risk of personal injury created by the violation of said regulations, ordinances or statutes by Defendants.

113. At all times relevant times, Plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

114. At all relevant times, Defendants knew, or in the exercise of ordinary and reasonable care should have known, that Plaintiff and similarly situated persons would be lawfully present on premises under Defendants' control, without knowledge of dangerous conditions on said premises; that the persons present on said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises; and that such persons were unaware of the aforesaid violations of codes, regulations and statutes by Defendants.

115. As a direct and proximate result of the foregoing, Plaintiff developed an asbestos-related illness and injury, including mesothelioma, and Plaintiff has suffered damages as herein alleged.

116. At all relevant times relevant herein, Defendants negligently selected, supplied, distributed, and provided asbestos-containing products to Plaintiff for use during his regular work activities, causing him to be exposed to respirable asbestos fibers.

117. At all relevant times, Defendants selected, supplied, and distributed asbestos-containing products to their employees for use during their regular work activities, such that said employees caused the release of respirable asbestos fibers to which Plaintiff and others similarly situated were then exposed as set forth herein.

118. At all relevant times, Defendants knew or should have known that their employees, contractors, and other persons lawfully on said premises, including Plaintiff, encountered asbestos-containing products during the course and scope of their work activities.

119. At all relevant times, Defendants, knew or should have known that the asbestos-containing products encountered on its premises by persons including Plaintiff were unsafe, in that respirable asbestos fibers were released during the use, handling, breaking, or other manipulation of those asbestos-containing products, and that once released, asbestos fibers can be inhaled, causing severe risk of disease and death in human beings.

120. At all relevant times, Defendants knew, or in the exercise of reasonable diligence, should have known, that employees and other persons lawfully present, including Plaintiff, who were exposed to asbestos-containing products as set forth herein would have asbestos fibers released from these products accumulating on their clothing, shoes, hair and persons, such that absent appropriate industrial hygiene controls to prevent such contamination, Plaintiff and other similarly situated persons would unknowingly carry these asbestos fibers home from the workplace, and contaminate their homes and vehicles, such that family members and others exposed to these asbestos fibers were at risk of severe and permanent harm.

///

121. At all relevant times, Defendants had a duty to use due care in the selection, supply, distribution and disturbance of asbestos-containing products; to adequately instruct, train, and supervise their employees; and to implement adequate industrial hygiene controls, safety policies and procedures to protect workers, and persons encountering those workers, including Plaintiff, from suffering injury or death as a result of exposure to respirable asbestos.

122. The duties of Defendants as alleged herein exist and existed independently of their duties to maintain their premises in reasonably safe condition, free from concealed hazards.

123. Defendants negligently selected, supplied, and distributed asbestos-containing products; failed to adequately train or supervise their employees to identify asbestos-containing products; to ensure the safe handling of asbestos-containing products encountered during the course of their work activities; and to guard against inhalation of asbestos fibers by those who would come into close contact with them after they had used, disturbed, or handled, said asbestos-containing products during the course and scope of their employment.

124. As a direct and proximate result of Defendants' conduct, and each of them as set forth herein, Plaintiff became exposed to and inhaled respirable asbestos fibers, which were a substantial factor contributing to his risk of developing an asbestos-related disease, which he in fact developed, leading to Plaintiff's injuries and damages.

125. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

///

///

///

///

///

**SEVENTH CAUSE OF ACTION**
**(Negligence - Brake Grinding Machines)**

**PLAINTIFFS COMPLAIN OF DEFENDANT HENNESSY INDUSTRIES INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO AMMCO TOOLS, ENERPAC TOOL GROUP CORP. f/k/a ACTUANT CORPORATION, f/k/a ALLIED POWER, INC., f/k/a ALLIED POWER INDUSTRIES, INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO BEAR MANUFACTURING COMPANY, AND OF DOES 101-150, FOR A SEVENTH CAUSE OF ACTION FOR NEGLIGENCE, AND ALLEGE AS FOLLOWS:**

126. Plaintiffs incorporate herein by reference each and every paragraph of the General Allegations and each cause of action set forth herein.

127. At all relevant times, defendant Hennessy Industries Inc., individually and through its predecessor in interest Ammco Tools, Enerpac Tool Group Corp. f/k/a Actuant Corporation, f/k/a Allied Power, Inc., f/k/a Allied Power Industries, Inc., f/k/a individually and as successor-in-interest to Bear Manufacturing Company, and DOEs 101-150, and their alternate entities, referred to collectively in this cause of action as "Brake Grinder Defendants", were engaged in the business of researching, designing, manufacturing, modifying, labeling, assembling, distributing, leasing, offering for sale, supplying, selling, inspecting, servicing, and packaging brake shoe grinding machines.

128. These brake shoe grinding machines were specifically designed for, and their intended use was for, grinding brake shoe linings. These linings acted as the friction component of brake assemblies on automobiles, light trucks and commercial trucks. The intended use and purpose of the brake shoe grinding machines was to grind brake shoe linings to match the size and shape of the brake shoe to the brake drum for full braking efficiency.

129. At all relevant times, virtually all brake shoe linings used on automobiles, light trucks and commercial trucks in the United States contained asbestos, while brake shoes that did not contain asbestos were available in only very limited quantities and for specialized uses.

130. At all relevant times, Brake Grinder Defendants intended to, and did, derive economic benefit from the use of their brake shoe grinding machines with asbestos-containing brake linings.

///

131. As they were intended and designed to do, Brake Grinder Defendants' brake shoe grinding machines ground and abraded the brake shoes and subjected them to pressures, temperatures, and force so that they would match the size and shape of the brake shoe to the brake drum for full braking efficiency.

132. As they were intended and designed to do, Brake Grinder Defendants' brake shoe grinding machines ground and abraded asbestos-containing brake shoes and subjected them to pressures, temperatures, and force, grinding portions of the lining into a fine powder, and inevitably releasing the asbestos containing in these brake shoes as airborne, respirable asbestos fibers.

133. These asbestos fibers released by Brake Grinder Defendants' brake shoe grinding machines presented a significant danger to human health, as they would be inhaled by anyone in the area around the brake shoe grinding machine during or after its use.

134. The normal operation and use of Brake Grinder Defendants' brake shoe grinding machines inevitably led to the release of asbestos from brake shoes, which therefore contributed to the hazards posed to Plaintiff and others similarly situated by these asbestos-containing brake shoes, as inhalation and ingestion of those asbestos fibers can and did cause serious disease in human beings, and specifically can and does cause malignant mesothelioma and lung cancer.

135. At all relevant times, the intended use of Brake Grinder Defendants' brake shoe grinding machines would have invariably subjected the user and those in proximity to those using these machines to exposure to asbestos.

136. At all times herein mentioned, Brake Grinder Defendants knew, or should have known, that asbestos fibers and products incorporating asbestos, including brake shoes and brake discs, were seriously hazardous to human health.

137. Because the intended operation of Brake Grinder Defendants' brake grinding machines on brake shoes, as set forth herein, released asbestos, the intended use of these machines was for an activity known to Brake Grinder Defendants to pose an unreasonable risk of harm.

138. Brake Grinder Defendants' brake grinding machines released respirable asbestos fibers when used as intended, subjecting the user of the machine and those nearby to exposure to asbestos fibers, causing harm to Plaintiff and others similarly situated.

139. Brake Grinder Defendants did not provide adequate warnings and instructions concerning the hazards of asbestos exposure and the risks posed to human health through the intended use of these brake shoe grinding machines, even though these risks were known or knowable to Brake Grinder Defendants in light of the scientific and medical knowledge that was generally accepted in the scientific and medical community at the time of manufacture, distribution and/or sale of these brake shoe grinding machines; that ordinary consumers of these brake shoe grinding machines would not have known or recognized the potential risks posed by the intended use of the brake shoe grinding machines; and that the lack of sufficient instructions and warnings by Brake Grinder Defendants was a substantial factor in causing harm to Plaintiff and others similarly situated, as set forth herein.

140. Further, Brake Grinder Defendants' brake shoe grinding machines did not provide any mechanism to adequately collect and isolate dust generated by the intended operation of the brake shoe grinding machines, as described herein, which could have isolated and contained dust released thereby, so as to contain the inevitable release of respirable asbestos and therefore the hazard to human health created by the intended operation of the brake shoe grinding machines.

141. Even though these risks were known or knowable to Brake Grinder Defendants in light of the scientific and medical knowledge that was generally accepted in the scientific and medical community at the time of manufacture, distribution and/or sale of these brake shoe grinding machines, Brake Grinder Defendants failed to warn Plaintiff, his family members, and others similarly situated of the danger from exposure to asbestos fibers released by the intended use of these brake shoe grinding machines.

142. Plaintiff and his family members used and worked in close proximity to others using and/or working with these brake shoe grinding machines, which caused Plaintiff to be exposed to asbestos fibers.

143. Brake Grinder Defendants failed to protect users, consumers, workers and others, including Plaintiff herein, who used or were in proximity to others using said brake shoe grinding machines from exposure to said asbestos fibers and increased their risk of harm, thereby rendering said machines unsafe and dangerous for use, by failing to prevent the release of asbestos containing dust and debris during and after the use of Brake Grinder Defendants' brake shoe grinding machines without precautions and by failing to provide sufficient use instructions and/or warnings of potential safety hazards concerning exposure to said asbestos fibers.

144. At all relevant times, Brake Grinder Defendants had a duty to exercise due care in the pursuance of the activities mentioned herein.

145. Brake Grinder Defendants breached their duty of care to Plaintiff and others similarly situated, as set forth herein. Brake Grinder Defendants' breach of this duty of care was a substantial factor in causing Plaintiff's injuries and damages.

WHEREFORE, Plaintiffs pray judgment against Brake Grinder Defendants, as set forth herein.

**EIGHTH CAUSE OF ACTION**
**(Strict Products Liability – Brake Grinding Machine)**

**PLAINTIFFS COMPLAIN OF DEFENDANT HENNESSY INDUSTRIES INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO AMMCO TOOLS, ENERPAC TOOL GROUP CORP. F/K/A ACTUANT CORPORATION, F/K/A ALLIED POWER, INC., F/K/A ALLIED POWER INDUSTRIES, INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO BEAR MANUFACTURING COMPANY, AND OF DOES 101-150, FOR AN EIGHTH CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY, ALLEGE AS FOLLOWS:**

146. Plaintiffs incorporate herein by reference each and every paragraph of the General Allegations and each cause of action set forth herein.

147. At all relevant times, defendant Hennessy Industries Inc., individually and through its predecessor in interest Ammco Tools, Enerpac Tool Group Corp. f/k/a Actuant Corporation, f/k/a Allied Power, Inc., f/k/a Allied Power Industries, Inc., f/k/a individually and as successor-in-interest to Bear Manufacturing Company, and DOEs 101-150, and their alternate entities, referred to collectively in this cause of action as "Brake Grinder Defendants", were engaged in

the business of researching, designing, manufacturing, modifying, labeling, assembling, distributing, leasing, offering for sale, supplying, selling, inspecting, servicing, and packaging brake shoe grinding machines.

148. These brake shoe grinding machines were specifically designed for, and their intended use was for, grinding brake shoe linings. These linings acted as the friction component of brake assemblies on automobiles, light trucks and commercial trucks. The intended use and purpose of the brake shoe grinding machines was to grind brake shoe linings to match the size and shape of the brake shoe to the brake drum for full braking efficiency.

149. At all relevant times, virtually all brake shoe linings used on automobiles, light trucks and commercial trucks in the United States contained asbestos, while brake shoes that did not contain asbestos were available in only very limited quantities and for specialized uses.

150. At all relevant times, Brake Grinder Defendants intended to, and did, derive economic benefit from the use of their brake shoe grinding machines with asbestos-containing brake linings.

151. As they were intended and designed to do, Brake Grinder Defendants' brake shoe grinding machines ground and abraded the brake shoes and subjected them to pressures, temperatures, and force so that they would match the size and shape of the brake shoe to the brake drum for full braking efficiency.

152. As they were intended and designed to do, Brake Grinder Defendants' brake shoe grinding machines ground and abraded asbestos-containing brake shoes and subjected them to pressures, temperatures, and force, grinding portions of the lining into a fine powder, and inevitably releasing the asbestos containing in these brake shoes as airborne, respirable asbestos fibers.

153. These asbestos fibers released by Brake Grinder Defendants' brake shoe grinding machines presented a significant danger to human health, as they would be inhaled by anyone in the area around the brake shoe grinding machine during or after its use.

///

154. The normal operation and use of Brake Grinder Defendants' brake shoe grinding machines inevitably led to the release of asbestos from brake shoes, which therefore contributed to the hazards posed to Plaintiff and others similarly situated by these asbestos-containing brake shoes, as inhalation and ingestion of those asbestos fibers can and did cause serious disease in human beings, and specifically can and does cause malignant mesothelioma and lung cancer.

155. At all relevant times, the intended use of Brake Grinder Defendants' brake shoe grinding machines would have invariably subjected the user, those in proximity to the machine, and those secondarily exposed from the use of the brake shoe grinding machines, as set forth herein, to exposure to asbestos.

156. At all times herein mentioned, Brake Grinder Defendants knew, or should have known, that asbestos fibers and products incorporating asbestos, including brake shoes and brake discs, were seriously hazardous to human health.

157. Because the intended operation of Brake Grinder Defendants' brake grinding machines on brake shoes, as set forth herein, released asbestos, the intended use of these machines was for an activity known to Brake Grinder Defendants to pose an unreasonable risk of harm.

158. Brake Grinder Defendants' brake grinding machines were defectively designed, in that they did not perform as safely as an ordinary consumer would expected it to perform when the brake grinding machines were used or misused in an intended or reasonably foreseeable way. These brake grinding machines released respirable asbestos fibers when used as intended, subjecting the user of the machine and those nearby to exposure to asbestos fibers, causing harm to Plaintiff and others similarly situated.

159. Brake Grinder Defendants' brake shoe grinding machines were defectively designed, in that they did not include adequate warnings and instructions concerning the hazards of asbestos exposure and the risks posed to human health through the intended use of these brake shoe grinding machines, even though these risks were known or knowable to Brake Grinder Defendants in light of the scientific and medical knowledge that was generally accepted in the

scientific and medical community at the time of manufacture, distribution and/or sale of these brake shoe grinding machines; that ordinary consumers of these brake shoe grinding machines would not have known or recognized the potential risks posed by the intended use of the brake shoe grinding machines; and that the lack of sufficient instructions and warnings by Brake Grinder Defendants was a substantial factor in causing harm to Plaintiff and others similarly situated, as set forth herein.

160. Further, Brake Grinder Defendants' brake shoe grinding machines did not provide any mechanism to adequately collect and isolate dust generated by the intended operation of the brake shoe grinding machines, as described herein, which could have isolated and contained dust released thereby, so as to contain the inevitable release of respirable asbestos and therefore the hazard to human health created by the intended operation of the brake shoe grinding machines.

161. Even though these risks were known or knowable to Brake Grinder Defendants in light of the scientific and medical knowledge that was generally accepted in the scientific and medical community at the time of manufacture, distribution and/or sale of these brake shoe grinding machines, Brake Grinder Defendants failed to warn Plaintiff, his family members, and others similarly situated of the danger from exposure to asbestos fibers released by the intended use of these brake shoe grinding machines.

162. Plaintiff and his family members used and worked in close proximity to others using and/or working with these brake shoe grinding machines, which caused Plaintiff to be exposed to asbestos fibers.

163. Brake Grinder Defendants failed to protect users, consumers, workers and others, including Plaintiff, who used or were in proximity to others using said brake shoe grinding machine from exposure to said asbestos fibers and increased their risk of harm, thereby rendering said machines unsafe and dangerous for use, by failing to prevent the release of asbestos containing dust and debris during and after the use of Brake Grinder Defendants' brake shoe grinding machines without precautions and by failing to provide sufficient use instructions and/or warnings of potential safety hazards concerning exposure to said asbestos fibers.

164. The defects in Brake Grinder Defendants' brake shoe grinding machines were a substantial factor in causing Plaintiff's injuries and damages.

WHEREFORE, Plaintiffs pray judgment against Brake Grinder Defendants as set forth herein.

**NINTH CAUSE OF ACTION**
**(Loss of Consortium)**

**PLAINTIFF CHRISTINE B. VILLINES COMPLAINS OF DEFENDANTS, AND DOES 1-150, AND EACH OF THEM, FOR A CAUSE OF ACTION FOR LOSS OF CONSORTIUM, AND ALLEGES AS FOLLOWS:**

165. Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

166. Plaintiffs were married on May 13, 1978 and at all relevant times were husband and wife.

167. Prior to his injuries as alleged, Plaintiff WAYNE E. VILLINES was able to, and did, fully perform the duties of a spouse. As a result of his injuries, Plaintiff WAYNE E. VILLINES has been and is unable to fully perform the necessary duties of a spouse and the work and service usually performed in the care, maintenance and management of the family home. As a proximate result thereof, Plaintiff CHRISTINE B. VILLINES was and is deprived of the full consortium of her spouse, including the performance of duties, all to Plaintiffs' damages, in an amount presently unknown to Plaintiffs but which will be proved at time of trial.

168. As a direct and proximate result of the Defendants' acts and omissions as set forth herein, and the severe injuries caused thereby to Plaintiff WAYNE E. VILLINES as set forth in the complaint, Plaintiff CHRISTINE B. VILLINES has suffered, and continues to suffer, loss of consortium, including but not by way of limitation, loss of love, comfort, care, assistance, protection, society, moral support services, marital relations, companionship and affection of her said spouse, and has suffered severe mental and emotional distress and other damages as a result thereof. Plaintiff CHRISTINE B. VILLINES seeks compensation only for such harm that has

occurred and will occur during the period between Plaintiff WAYNE E. VILLINES's mesothelioma diagnosis and untimely death.

169. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and done in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff WAYNE E. VILLINES, and resulted in Plaintiff CHRISTINE B. VILLINES's loss of consortium. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof, excluding as to Defendants Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc.

WHEREFORE, Plaintiffs pray judgment against Defendants.

## PRAYER FOR JUDGMENT

WHEREFORE, Plaintiffs pray judgment against Defendants, their alternate entities, and each of them, in an amount to be proved at trial, as follows:

1. For Plaintiffs' general damages according to proof;
2. For medical and related expenses according to proof;
3. For loss of earnings according to proof;
4. For exemplary or punitive damages according to proof, excluding as to Defendants Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc.;
5. For Plaintiffs' cost of suit herein;
6. For damages for fraud according to proof; and
7. For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in California Code of Civil Procedure sections 998 and 1032 and related provisions of law.

DATED: February 21, 2025

Maune Raichle Hartley French & Mudd LLC

By: [signature]
David L. Amell
Attorney for Plaintiffs

**EXHIBIT A**

Plaintiff Wayne E. Villines ("Plaintiff" or "Mr. Villines") served as an Electrician's Mate in the United States Navy from September of 1963 through September of 1966. Throughout his service in the Navy, Plaintiff routinely performed maintenance and repair work on shipboard equipment, and worked in the presence of other sailors while they performed their work. Plaintiff was also present when the ships he served aboard underwent repair and overhaul work at shipyards in the State of California. Plaintiffs allege that the products and materials that Plaintiff worked with and around during his service in the Navy contained asbestos and that he was exposed to asbestos through this work.

After his service in the Navy, Plaintiff worked as an electrician at various new residential and commercial construction jobsites throughout the State of California. He installed and worked on electrical equipment and materials, including but not limited to conduit, cable, wire, panels, sub-panels, and breaker boxes. While working on these jobsites as an electrician, Plaintiff frequently worked in close proximity to other trades, including drywallers and stucco workers, while they performed their work.

Beginning in 1967, Plaintiff began working as an electrician for Exeter Memorial Hospital. Shortly thereafter he was promoted to maintenance supervisor. In his role as maintenance supervisor, Plaintiff performed maintenance and repair work on equipment – including but not limited to electrical equipment and HVAC equipment – and installed fire doors throughout the hospital. New construction took place at the hospital while Plaintiff worked there and Plaintiff worked in close proximity to other trades, including but not limited to electricians and drywallers, while they worked. Plaintiffs allege that the equipment and materials that Plaintiff worked with, and that others worked with in his presence while he worked as an electrician and maintenance supervisor contained asbestos and that he was exposed to asbestos through this work.

During the mid-1970s, Plaintiff worked for several oil field service contractors, and repaired, serviced and replaced oil field equipment such as motors, pumps and valves. Plaintiffs allege that the products and materials Plaintiff worked with during this employment contained asbestos and that he was exposed to asbestos through this work.

From 1976 to 1978, and in 1988, Plaintiff worked as an auto mechanic. He performed brake jobs on a daily basis, and also routinely performed clutch and gasket jobs. From 1979 to 1983, Plaintiff worked as a salesman for Snap-On Tools, demonstrating and selling auto equipment, including brake grinders, to local mechanic shops and dealerships. From 1983 to 1988, Plaintiff worked as a salesman, and eventual district sales manager, for Matco Tools, during which time he continued to demonstrate and sell auto equipment including brake grinders to mechanic shops and dealerships. Plaintiffs allege that the friction material on the products Plaintiff worked with contained asbestos and that he was exposed to asbestos through this work.

In addition to his alleged occupational exposures to asbestos, Plaintiff also routinely performed home remodel and repair work on his own personal residences from the 1970's onward. He worked with numerous different types of construction materials, including but not limited to joint compound, stucco, floor tile and mastic, as well as electrical equipment. Plaintiffs

allege that these products contained asbestos and that Plaintiff's work with these products exposed him to asbestos.

Finally, in addition to his occupational friction work, Plaintiff performed brake and clutch work on his own vehicles and the vehicles of friends and family throughout his teenage and adult lifetime. Plaintiffs allege that the friction material on the products Plaintiff worked with contained asbestos and that his work with those friction products exposed him to asbestos.

Plaintiffs do not contend that Mr. Villines was exposed to asbestos for which Defendant METALCLAD INSULATION, LLC is liable after December 31, 1979.

**EXHIBIT B**

ABB, INC., Individually and as Successor-in-Interest to I-T-E IMPERIAL COMPANY, f/k/a I-T-E CIRCUIT BREAKER COMPANY;
ACME SERVICE CORP;
AMERICAN BILTRITE, INC.;
BAKER HUGHES OILFIELD OPERATIONS LLC;
BALDOR ELECTRIC COMPANY;
BELDEN INC.;
BOISE CASCADE COMPANY;
BWDAC, INC.;
CHEVRON USA, INC.;
CLEVELAND-CLIFFS STEEL CORPORATION, as Successor-In-Interest to AK STEEL CORPORATION and NATIONAL SUPPLY;
THE COLEMAN COMPANY, INC., as Successor-in-Interest to SANBORN MANUFACTURING COMPANY;
CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC.;
COPELAND CORPORATION LLC;
CROWN CORK & SEAL COMPANY, INC., Individually and as Successor-in-Interest to MUNDET CORK CORPORATION;
DEVON ENERGY CORPORATION, Individually and as Successor-in-Interest to SANTA FE ENERGY RESOURCES, INC.;
DCO, LLC, f/k/a DANA COMPANIES, LLC, Individually and Successor-in-Interest to VICTOR GASKET MANUFACTURING COMPANY and SPICER PARTS;
DINGS COMPANY;
DISCOUNT BUILDERS SUPPLY;
EATON CORPORATION, as Successor-in-Interest to CUTLER-HAMMER, INC.;
EMERSON ELECTRIC CO., Individually and as Successor-in-Interest to US ELECTRIC MOTOR and DOERR ELECTRIC CORPORATION;
EMPIRE SUPPLY CO., INC.;
ENERPAC TOOL GROUP CORP. f/k/a ACTUANT CORPORATION, f/k/a ALLIED POWER, INC., f/k/a ALLIED POWER INDUSTRIES, INC., Individually and as successor-in-interest to BEAR MANUFACTURING COMPANY;
FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as Successor-In-Interest to FELT PRODUCTS MANUFACTURING COMPANY and VELLUMOID DIVISION OF FEDERAL MOGUL;
FLOWSERVE US, INC., solely as successor to EDWARD VALVE & ROCKWELL MANUFACTURING COMPANY;
FMC CORPORATION, Individually and as successor in interest to CHICAGO PUMP COMPANY, PEERLESS PUMP COMPANY, and NORTHERN PUMP COMPANY;
FORT KENT HOLDINGS, INC., Individually and as Successor-in-Interest to DUNHAM-BUSH, as Successor-in-Interest to BRUNNER MANUFACTURING COMPANY;
G. DENVER AND CO., LLC;
GENERAL CABLE CORPORATION;
GENERAL ELECTRIC COMPANY;
GENUINE PARTS COMPANY;
THE GOODYEAR TIRE & RUBBER COMPANY;
GOULD ELECTRONICS, INC., Individually and as successor-in-interest to GOULD, INC., as successor-in-interest to I-T-E IMPERIAL CORP. and BULLDOG ELECTRIC PRODUCTS CO.;
GOULDS PUMPS, LLC;
GRAYBAR ELECTRIC COMPANY, INC.;
GREENE, TWEED & CO., INC.;
HANSON PERMANENTE CEMENT, INC.;

HENNESSY INDUSTRIES, LLC, Individually and as Successor-In-Interest to AMMCO TOOLS, INC.;
HILL BROTHERS CHEMICAL COMPANY;
HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC., individually and as successor-in-interest to the BENDIX CORPORATION, BENDIX AVIATION CORP., and THE SIGNAL COMPANIES, INC., f/k/a SIGNAL OIL & GAS COMPANY;
IMO INDUSTRIES, INC., Individually and as successor in interest to DELAVAL TURBINE INC. and SHARPLES, INC.;
IMPORTED PARTS WEST;
INDUCTOTHERM CORP.;
KAISER GYPSUM COMPANY, INC.;
KLEPPER ELECTRIC COMPANY;
MAT INDUSTRIES, LLC as Successor-in-Interest to SANBORN MANUFACTURING COMPANY;
MCCORD CORPORATION;
METALCLAD INSULATION, LLC;
MORSE TEC LLC f/k/a BORGWARNER MORSE TEC LLC, Individually and as Successor-In-Interest to BORGWARNER CORPORATION;
OSRAM-SYLVANIA INC.;
PAREX USA, INC. f/k/a PAREXLAHABRA, INC. and LA HABRA PRODUCTS, INC., Individually and as Successor-in-Interest to MERLEX STUCCO, INC.;
PACIFIC COAST SUPPLY, LLC;
PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania Corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION;
PARKER HANNIFIN CORPORATION as Successor-In-Interest to EIS BRAKES;
PFIZER, INC.;
PNEUMO ABEX LLC, Individually and as Successor-By-Merger to PNEUMO ABEX CORPORATION, Successor-In-Interest to ABEX CORPORATION f/k/a AMERICAN BRAKE SHOE COMPANY, f/k/a AMERICAN BRAKE SHOE AND FOUNDRY COMPANY including the AMERICAN BRAKEBLOK DIVISION, Successor-By-Merger to the AMERICAN BRAKE SHOE AND FOUNDRY COMPANY and THE AMERICAN BRAKEBLOK CORPORATION, f/k/a THE AMERICAN BRAKE MATERIALS CORPORATION;
REDCO CORPORATION, formerly known as CRANE CO.;
REGAL REXNORD CORPORATION, Individually and as Successor-in-Interest to FASCO INDUSTRIES;
REX INTERNATIONAL U.S.A. INC.;
REXEL USA, INC., Individually and as Successor-in-Interest to PLATT ELECTRIC SUPPLY;
ROCKWELL AUTOMATION, INC., as Successor-in-Interest to ALLEN-BRADLEY CO.;
RSCC WIRE & CABLE, LLC, a/k/a ROCKBESTOS SUPRENANT CABLE CORPORATION;
SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D COMPANY;
SHELL OIL COMPANY;
SIEMENS INDUSTRY, INC., Individually and as successor-in-interest to I-T-E;
SPORTING GOODS PROPERTIES, INC., Individually and as Successor-in-Interest/pae/et REMINGTON ARMS COMPANY, INC.;
STANDARD MOTOR PRODUCTS, INC.;
SYD CARPENTER, MARINE CONTRACTOR, INC.;
TECUMSEH PRODUCTS COMPANY, LLC, Individually and as Successor-in-Interest to FASCO INDUSTRIES;
T.M. COBB COMPANY, individually and on behalf of its subsidiary HALEY BROS. INC.;
TOSHIBA INTERNATIONAL CORPORATION;
TRIPLE A MACHINE SHOP, INC.;
UNION CARBIDE CORPORATION;
UNION OIL COMPANY OF CALIFORNIA;

VERIZON COMMUNICATIONS, INC., Individually and as Successor-in-Interest to GTE CORPORATION, Successor-in-Interest to ZINSCO ELECTRICAL PRODUCTS;
WEYERHAEUSER COMPANY;
W.W. GRAINGER, INC., Individually and as Successor-in-Interest to DOERR ELECTRIC CORPORATION and DAYTON ELECTRIC MANUFACTURING CO.;
THE W.W. HENRY COMPANY, LP, Individually and as Successor-In-Interest to, and formerly known as THE W.W. HENRY COMPANY;
and DOES 1-50.

**EXHIBIT C**

CHEVRON USA, INC.;
METALCLAD INSULATION, LLC;
SHELL OIL COMPANY;
SYD CARPENTER, MARINE CONTRACTOR, INC.;
TRIPLE A MACHINE SHOP, INC.;
UNION OIL COMPANY OF CALIFORNIA;
and DOES 51-100.

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
David L. Amell, Esq. (SBN 227207) / Maune Raichle Hartley French & Mudd, LLC
1900 Powell Street, Suite 200, Emeryville, CA 94608

TELEPHONE NO.: (800) 358-5922 FAX NO.: (314) 241-4838
EMAIL ADDRESS: damell@mrhfmlaw.com
ATTORNEY FOR *(Name)*: Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Villines v. ABB, Inc., et al.

*FOR COURT USE ONLY*

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**02/21/2025**
**Clerk of the Court**
BY: SAHAR ENAYATI
Deputy Clerk

## CIVIL CASE COVER SHEET

[X] **Unlimited** (Amount demanded exceeds $35,000)
[ ] **Limited** (Amount demanded is $35,000 or less)

**Complex Case Designation**

[ ] Counter [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: CGC-25-277280

JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[X] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify)*: Nine (9)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 21, 2025
David L. Amell, Esq.
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/
    - Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

# Superior Court of California, County of San Francisco
# Alternative Dispute Resolution
# Information Package

The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**<u>Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint</u>**

**WHAT ARE THE ADR OPTIONS?**

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**2) MEDIATION**

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

**3) ARBITRATION**

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION**

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION**

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**HOW DO I PARTICIPATE IN ADR?**

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address)<br><br>TELEPHONE NO.:<br><br>ATTORNEY FOR (Name): | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: ____________<br>**DEPARTMENT 610** |

**1) The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): ____________________

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days ☐ 90-120 days ☐ Other (please specify) ____________

☐ **Other ADR process (describe)** ________________________________

**2) The parties agree that the ADR Process shall be completed by (date):** ____________________

**3) Plaintiff(s) and Defendant(s) further agree as follows:**

______________________________________________________________________

| | |
|---|---|
| ______________________<br>Name of Party Stipulating | ______________________<br>Name of Party Stipulating |
| ______________________<br>Name of Party or Attorney Executing Stipulation | ______________________<br>Name of Party or Attorney Executing Stipulation |
| ______________________<br>Signature of Party or Attorney | ______________________<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: ______________ | Dated: ______________ |

☐ ***Additional signature(s) attached***

**MAUNE.RAICHLE.HARTLEY.FRENCH & MUDD, LLC**
David L. Amell, Esq. (State Bar No. 227207)
David L. Rancillio, Esq. (State Bar No. 281129)
1900 Powell Street, Suite 200
Emeryville, California 94608
Telephone: (800) 358-5922
Facsimile: (314) 241-4838
damell@mrhfmlaw.com
drancilio@mrhfmlaw.com

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**02/21/2025**
**Clerk of the Court**
BY: SAHAR ENAYATI
Deputy Clerk

Attorneys for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – COURT OF UNLIMITED JURISDICTION

**CGC-25-277280**

WAYNE E. VILLINES and CHRISTINE B. VILLINES,

Plaintiffs,

vs.

ABB, INC., Individually and as Successor-in-Interest to I-T-E IMPERIAL COMPANY, f/k/a I-T-E CIRCUIT BREAKER COMPANY, et al.

Defendants.

Case No.:

**PLAINTIFFS' DEMAND FOR JURY TRIAL**

TO THE CLERK OF THE ABOVE ENTITLED COURT, TO ALL PARTIES HEREIN, AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs hereby demand a jury trial in the above-captioned matter.

DATED: February 21, 2025

Maune Raichle Hartley French & Mudd LLC

By: [signature]
David L. Amell
Attorney for Plaintiffs

**MAUNE.RAICHLE.HARTLEY.FRENCH & MUDD, LLC**
David L. Amell, Esq. (State Bar No. 227207)
David L. Rancillio, Esq. (State Bar No. 281129)
1900 Powell Street, Suite 200
Emeryville, California 94608
Telephone: (800) 358-5922
Facsimile: (314) 241-4838
damell@mrhfmlaw.com
drancilio@mrhfmlaw.com

Attorneys for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – COURT OF UNLIMITED JURISDICTION

| | |
|---|---|
| WAYNE E. VILLINES and CHRISTINE B. VILLINES,<br><br>Plaintiffs,<br><br>vs.<br><br>ABB, INC., Individually and as Successor-in-Interest to I-T-E IMPERIAL COMPANY, f/k/a I-T-E CIRCUIT BREAKER COMPANY, et al.<br><br>Defendants. | Case No.:<br><br>**PLAINTIFFS' NOTICE OF POSTING OF ADVANCED JURY FEES** |

TO ALL PARTIES HEREIN, AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs hereby submit a jury fee deposit in the amount of $150.00 in the above-entitled action pursuant to California Code of Civil Procedure § 631(b).

DATED: February 21, 2025

Maune Raichle Hartley French & Mudd LLC

By: [signature]
David L. Amell
Attorney for Plaintiffs

**MAUNE.RAICHLE.HARTLEY.FRENCH & MUDD, LLC**
David L. Amell, Esq. (State Bar No. 227207)
David L. Rancillio, Esq. (State Bar No. 281129)
1900 Powell Street, Suite 200
Emeryville, California 94608
Telephone: (800) 358-5922
Facsimile: (314) 241-4838
damell@mrhfmlaw.com
drancilio@mrhfmlaw.com

Attorneys for Plaintiffs

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**02/21/2025**
**Clerk of the Court**
BY: SAHAR ENAYATI
Deputy Clerk

**CGC-25-277280**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – COURT OF UNLIMITED JURISDICTION

WAYNE E. VILLINES and CHRISTINE B. VILLINES,

Plaintiffs,

vs.

ABB, INC., Individually and as Successor-in-Interest to I-T-E IMPERIAL COMPANY, f/k/a I-T-E CIRCUIT BREAKER COMPANY, et al.

Defendants.

Case No.:

**PRELIMINARY FACT SHEET / NEW FILING / ASBESTOS LITIGATION**

TO THE CLERK OF THE ABOVE ENTITLED COURT, TO ALL PARTIES HEREIN, AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

Please take notice that Plaintiffs hereby submit their Preliminary Fact Sheet in the above entitled matter, attached hereto as Exhibit A.

DATED: February 21, 2025

Maune Raichle Hartley French & Mudd LLC

By: [signature]
David L. Amell
Attorney for Plaintiffs

# EXHIBIT A

## PRELIMINARY FACT SHEET

1. State the complete name and address of each person whose claimed exposure to asbestos is the basis of this lawsuit ("exposed person"):

Wayne E. Villines c/o MRHFM, LLC, 1900 Powell Street, Suite 200, Emeryville, CA 94608

2. Does the plaintiff anticipate filing a motion for preferential trial date within the next four months? ☒ Yes ☐ No

3. Date of birth each exposed person in item one and, if applicable, date of death:

September 27, 1945

4. Specify the nature or type of asbestos-related disease alleged by each exposed person.

☐ Asbestos ☒ Mesothelioma ☐ Lung Cancer
☐ Other Cancer (specify): ____
☐ Pleural Thickening/Plaques ☐ Other (specify): ____

5. For purposes of identifying the nature of exposure allegations involved in this action, please check one or more:

☐ Shipyard ☐ Construction ☐ Friction/Automotive
☐ Premises ☐ Aerospace ☐ Military
☒ Other (specify): Exposure to asbestos-containing products.

6. If applicable, indicate which exposure allegations apply to which exposed person.

All exposure allegations apply to Plaintiff Wayne E. Villines

7. Identify each location alleged to be source of an asbestos exposure, and to the extent known, provide the beginning and ending year(s) of each such exposure. Also specify each exposed person's employer and job title or job description during each period of exposure. (For example: "San Francisco Naval Shipyard, Pipefitter, 1939-1948"). Examples of locations of exposure might be a specific shipyard, a specific railroad maintenance yard, or perhaps more generalized description such as "merchant marine" or "construction". If an exposed person claims exposure during only a portion of a year, the answer should indicate that year as the beginning and ending (e.g., 1947-1947).

| Location of Exposure | Employer | Job Title at Time of Exposure | Year(s) of Exposure | |
|---|---|---|---|---|
| | | | Beginning | Ending |
| Please see exhibit A of the Complaint for Personal Injury and Loss of Consortium - Asbestos. | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

☐ Attach additional pages, if necessary

8. For each exposed person who:
   a. Worked in the United States or for a U.S. agency outside the territorial United States, attach to the copy of this fact sheet provided to Designated Defense Counsel a fully executed Social Security Earnings authorization (Exhibit I);

   b. May have had a Social Security disability award or is no longer employed and whose last employment was not with a United State government agency, attach to the copy of this fact sheet provided to Designated Counsel a fully executed Social Security Disability authorization (Exhibit I);

   c. Served at any time in the United State military, attach to the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals of the stipulation (Exhibit I);

   d. Was employed by the United State government in a civilian capacity, attach to the copy of this fact sheet provided to designated Defense Counsel two fully executed originals of the stipulation (Exhibit I).

9. If there is a wrongful death claim, attach to the copy of this fact sheet provided to Designated Defense Counsel a copy of the death certificate, if available. If an autopsy report was done, also attach of it to the copy of this fact sheet provided to Designated Defense Counsel.

By: [signature]
Attorney for Plaintiff

CASE NUMBER: CGC-25-277280 WAYNE E. VILLINES ET AL VS. ABB, INC. ET AL

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **JAN 20, 2026**

**TIME:** **4:00 pm**

**PLACE:** **Department 301**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

**All parties must appear and comply with California Rules of Court 3.110**

**CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.**

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**